# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **BANNER BANK, successor by merger of AmericanWest Bank which formerly did business in Utah as Far West Bank,**<br><br>   **Plaintiff,**<br><br> **vs.**<br><br>**REAL ESTATE INVESTOR EDUCATION, LLC, a Nevada limited liability company; REAL ESTATE INVESTOR SUPPORT, LLC, a dissolved Nevada limited liability company; JAMES M. SMITH, a Utah resident, JMS MARKETING L.L.C., a Utah limited liability company; LOREE C. SMITH, an individual and JOHN DOES 1-10,**<br><br>   **Defendants.** | **MEMORANDUM DECISION & ORDER**<br><br><br>**Case No. 2:12-cv-763**<br><br>**Judge Clark Waddoups** |
| **JAMES M. SMITH**<br><br>    **Counterclaimant,**<br>  **vs.**<br><br>**BANNER BANK,**<br><br>    **Counterclaim Defendant.** | |
| **LOREE C. SMITH,**<br><br>    **Counterclaimant,**<br>  **vs.**<br><br>**BANNER BANK,**<br><br>    **Counterclaimant,** | |

## INTRODUCTION

A three-day bench trial was held in this matter beginning on June 5, 2017, during which the court heard Banner Bank's claims against James Smith ("James") and Loree Smith's ("Loree") counterclaims against Banner Bank. Specifically, Banner Bank sought an order to foreclose on twelve parcels of land in Oregon that it alleged James pledged as collateral for a 2009 loan, and Loree alleged that Banner Bank breached the terms of a Consent, Waiver and Release Agreement. Before the parties presented their closing arguments, James filed for Chapter 7 Bankruptcy, and the bankruptcy trustee ultimately abandoned those Oregon properties, mooting Banner Bank's attempts to foreclose on his land. The court heard closing arguments on Loree's counterclaims against Banner Bank on February 28, 2019. The issues concerning Loree's counterclaims have been fully briefed and are ripe for resolution.

## FACTUAL BACKGROUND

On or about July 30, 2009, Real Estate Investor Support, LLC ("Real Estate Investor Support") and AmericanWest Bank, Banner Bank's predecessor in interest, entered into a loan agreement. Real Estate Investor Support executed a promissory note in the amount of $2,300,000 in favor of AmericanWest Bank (the "Loan"). James, who was an owner of Real Estate Investor Support, personally guaranteed payment of the Loan and placed his signature on a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") that offered as collateral twelve parcels of land situated in Lane County, Oregon (the "Oregon Properties"). The Oregon Properties consisted of eleven undeveloped lots (the "Eleven Parcels") and a condominium ("Unit 7"). At the time James placed his signature on the Deed of Trust, July 30, 2009, James was the sole owner of the Eleven Parcels, and he and Loree jointly

owned Unit 7 as tenants by the entirety.[1]  Although the Deed of Trust listed James and Loree jointly as "Owner" and included a signature block for both James and Loree, Loree refused to sign it.  James placed his signature on the Deed of Trust but did not change the language naming him and Loree as the "Owner."  He also did not change the signature block which required both James and Loree to sign.  Banner Bank proceeded to close and fund the Loan without the fully executed Deed of Trust.  Banner Bank then held the defective Deed of Trust without recording it. Once the Loan went into default, Banner Bank attempted to record it.  After the Deed of Trust was rejected for recording, someone altered it to cross out Loree's name and the part of the signature block that required her signature.  Almost two years after the Loan closed, Banner Bank then recorded the altered Deed of Trust among the land records of Lane County, Oregon, on July 13, 2011.  At one point, in an attempt to cure the defective Deed of Trust, Banner Bank prepared a revised deed of trust with only James's name as the Owner.  The revised deed of trust did not encumber Unit 7, but only the Oregon Properties that were held by James.  James placed his signature on the revised deed of trust but refused to deliver it to Banner Bank, instead delivering it to his lawyer to hold in trust pending resolution of the pending disputed issues.  The revised deed of trust was never delivered to Banner Bank.

James began to experience financial difficulties soon after agreeing to the Loan.  On December 31, 2010, Real Estate Investor Support, James, and Loree sold all of Real Estate Investor Support's assets to Real Estate Investor Education, LLC ("Real Estate Investor Education") under an Asset Purchase Agreement.  As part of this agreement, Real Estate Investor Education agreed to assume the Loan, and on or about December 31, 2010, Real Estate Investor

---

[1] Although James and Loree were separated in 2009, it is uncontested that they jointly owned Unit 7 at the time that James placed his signature on the Deed of Trust.  Loree subsequently obtained sole ownership of Unit 7 pursuant to an interim order entered by a Florida court in November 2012, which was made final in December 2014.

Support, Real Estate Investor Education, James, and Far West Bank, a division of AmericanWest

Bank, Banner Bank's predecessor in interest, entered into a Consent, Waiver and Release

Agreement (the "Release").  Material to this case is Paragraph 4 of the Release, which states:

> In consideration of this Agreement, the Borrower and Lender, on
> behalf of themselves, their successors, assigns, legal
> representatives (collectively and individually the "**Releasing
> Parties**"), hereby fully, finally and completely RELEASE and
> FOREVER DISCHARGE Loree Smith of and from any and all
> claims, controversies, disputes, liabilities, obligations, demands,
> damages, debts, liens, actions and causes of action of any and
> every nature whatsoever relating to the Loan.

(Pl. Ex. 11, at ¶ 4 (emphasis in original).)  The "Loan" referenced in the Release is the Loan

described above.  The Release did not modify or release James's personal guaranty to repay the

Loan.

Real Estate Investor Education failed to repay the Loan, and James did not make

payments pursuant to his guaranty.  Thus, on August 6, 2012, Banner Bank initiated this action

by filing a complaint against Real Estate Investor Education, Real Estate Investor Support,

James, JMS Marketing L.L.C., Loree, and 10 John Does, in which it sought, *inter alia*, an order

to foreclose on the Deed of Trust, a writ directing the sale of James's interest in the Oregon

Properties, and declaratory judgment against Loree determining that she does not hold any

interest in the Eleven Parcels.  (ECF No. 2 at ¶¶ 67, 68, 73–77, Compl.)

Real Estate Investor Education, Real Estate Investor Support, and JMS Marketing L.L.C.

failed to answer the Complaint, and on February 1, 2016, default judgment was entered against

them.  After her initial motion to dismiss was denied, Loree filed an Answer to Banner Bank's

Complaint in which she requested that the Deed of Trust be canceled and asserted counterclaims

against Banner Bank for slander of title, civil conspiracy, abuse of process, and breach of

contract.  (ECF No. 75.)  James similarly raised counterclaims against Banner Bank, alleging

improper securitization of pledged property located in South Carolina and breach of contract regarding the sale of intellectual property.  (ECF No. 24.)

Banner Bank moved for summary judgment on all of these counterclaims.  By Order dated February 21, 2017, the court granted Banner Bank summary judgment as to James's liability under the guaranty; dismissed with prejudice both of James's counterclaims; granted Banner Bank summary judgment on all of Loree's counterclaims except for her claim that Banner Bank breached the Release; and determined that Banner Bank's claims for declaratory judgment as to Loree's ownership in the Oregon Properties were moot.  (ECF No. 196.)

At a three-day bench trial beginning June 5, 2017, the court heard the two remaining issues in this case—Banner Bank's request for an order to foreclose on and a writ to sell the Eleven Parcels and Loree's counterclaim that Banner Bank breached the Release.  The court heard testimony and received evidence from James; Loree; Oana Cosmina Norman, an employee of Banner Bank ("Ms. Norman"); and Carrie Hurst, a paralegal for the law firm that represents Banner Bank.  The parties offered substantial evidence regarding the alteration and recordation of the Deed of Trust.  The evidence at trial supported the facts set forth above as to Banner Bank's efforts to obtain signatures on the Deed of Trust and record it.

When Banner Bank offered the original Deed of Trust into evidence during the second day of trial, it was discovered that the document had received additional alterations.  At some point between the execution and recordation of the Deed of Trust, the numbers "132" were written on the upper left-hand corner of the first page in blue ink, a series of numbers were written on the top of the first page and subsequently whited-out, and a note was written on the right-hand corner of the first page in pencil.  Someone subsequently attempted to erase the

penciled note. It appears the note reads: "Not [r?] . . d as per Rick S + Dan Eag."[2] Loree implies

that this erased language indicates that Banner Bank had knowledge that the Deed of Trust was

defective, but the court does not reach a conclusion on what the language meant. While a copy

of the recorded version of the Deed of Trust was attached to Banner Bank's Complaint and

disclosed in discovery, that copy did not depict the numbers that were written on the top of the

first page and whited-out or the note that was written on the right-hand corner of the first page

and erased—it did, however, show the written "132."

     At the close of evidence, the court directed the parties to submit written briefs for their

closing arguments, which they did on August 10, 2017. Closing arguments were scheduled to be

heard on October 12, 2017, but on or about September 5, 2017, James filed for Chapter 7

Bankruptcy, and the matter was stayed. Subsequently, the Trustee in James's bankruptcy

proceeding abandoned the Oregon Properties, thereby mooting Banner Bank's request for an

order to foreclose on the Eleven Parcels.

     On February 28, 2019, the court heard oral argument on the only remaining issue in this

case—Loree's counterclaim that Banner Bank breached the Release. Loree asserts that she is

entitled to recover the attorney fees she incurred as a result of this breach. Because it is

undisputed that Loree did not make, and therefore waived, a claim for her attorney fees as a type

of consequential damages, she pursues those fees under a theory that Banner Bank acted in bad

faith. Following oral argument, Banner Bank submitted a Motion for Leave for the Court to

Receive Corrections and/or Clarifications Concerning Inaccurate Statements or Arguments Made

and/or Asserted at Hearing (ECF No. 285), which was opposed by Loree (ECF No. 288). The

---

[2] The letters in the brackets and the letters replaced by the ellipsis are not clearly readable.

court has reviewed Banner Bank's motion and its reply brief in support of that Motion (ECF No. 289) and has considered the submissions and arguments contained therein in making this ruling.

<h2 style="text-align:center">FINDINGS OF FACT</h2>

The court enters these findings of fact based on a preponderance of the evidence. In assessing the credibility of the witnesses, the court has considered the source and basis of each witness's knowledge; the ability of each witness to observe; the strength of the witness's memory; each witness's interest, if any, in the outcome of the litigation; the relationship of each witness to either side in the case; and the extent to which each witness's testimony is either supported or contradicted by other evidence presented at trial. To the extent that any of the above statement of background facts is not expressly included below, those statements are additional findings of fact by the court. In addition, if any findings of fact that may be viewed as conclusions of law, or if any conclusions of law that may be viewed as findings of fact, the court intends that they be so interpreted.

### The 2009 Deed of Trust

1.      On July 30, 2009, Real Estate Investor Support and Far West Bank, a division of AmericanWest Bank, predecessor in interest to Banner Bank, entered into a Term Loan Agreement. Pl. Ex. 3.

2.      As part of the Term Loan Agreement, Real Estate Investor Support gave Far West Bank a promissory note in the amount of $2.3 million (the "Loan"). Pl. Ex. 2.

3.      In order to provide assurance for the repayment of the Loan, James, who was an owner of Real Estate Investor Support, placed his signature on a Guaranty on July 30, 2009, in which he guaranteed the payment and performance of the Loan. Pl. Ex. 4.

4.	James also placed his signature on a Deed of Trust on July 30, 2009 that pledged as collateral for the Loan the Oregon Properties, which consisted of the Eleven Parcels and Unit 7.  Pl. Ex. 7, 52, 53.

5.	On July 30, 2009, the Eleven Parcels were owned by James.  Trial Tr., 56:1–5.

6.	On July 30, 2009, Unit 7 was owned jointly by James and Loree.  Def. Ex. 148; Trial Tr., 56:1–10.

7.	Banner Bank knew that Unit 7 was owned jointly by James and Loree.  *Id.*  As such, the Deed of Trust identified both James and Loree as "Owner" and provided a signature block and notary acknowledgement for both James and Loree.  Pl. Ex. 7, 52, 53.

8.	After James placed his signature on the Deed of Trust on July 30, 2009, he gave it, along with other Loan documents, to Aaron Osmond, the manager of Real Estate Investor Support.  Trial Tr., 414:11–22.  James was aware that Loree had not signed the Deed of Trust, but he believed that she would sign it before it was recorded.  *Id.*  Mr. Osmond delivered those documents to Banner Bank.  Trial Tr., 41:13–21.  Loree refused to sign the Deed of Trust.  Pl. Ex. 7, 52, 53.

9.	Sometime after 2009, but likely just before July 13, 2011, Banner Bank attempted to record the Deed of Trust, but Lane County, Oregon recorder's office rejected it because the instrument was not signed by Loree.  Pl. Ex. 44, at 42:8–43:24; 62:16–63:24; Def. Ex. 163, Ex. 4.

**The Release**

10.	On December 31, 2010, Real Estate Investor Support, James, and Loree sold all of Real Estate Investor Support's assets to Real Estate Investor Education under an Asset

Purchase Agreement. Pl. Ex. 10. As part of this agreement, Real Estate Investor Education agreed to assume the Loan. *Id.*

11.     In connection with this Asset Purchase Agreement, on or about December 31, 2010, Real Estate Investor Support, Real Estate Investor Education, James, and Far West Bank, a division of AmericanWest Bank, Banner Bank's predecessor in interest, entered into the Release. Pl. Ex. 11.

12.     Paragraph 4 of the Release states that "[i]n consideration of this Agreement, the Borrower and Lender, on behalf of themselves, their successors, assigns, legal representatives (collectively and individually the "**Releasing Parties**"), hereby fully, finally and completely RELEASE and FOREVER DISCHARGE Loree Smith of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, debts, liens, actions and causes of action of any and every nature whatsoever relating to the Loan." *Id.* at ¶ 4 (emphasis in original).

**Negotiations to Revise Deed of Trust**

13.     On September 21, 2010, Ms. Norman, an employee of Banner Bank, emailed Dan Eagan, counsel for Banner Bank, and informed him that the Deed of Trust needed to be revised to remove Loree's name and signature line. Def. Ex. 163, Ex. 4. Mr. Eagan prepared a revised deed of trust that eliminated Unit 7 from the property securing the loan and removed Loree's name and signature block. Def. Ex. 163, Ex. 7. The revised deed of trust therefore only required James's signature.

14.     James placed his signature on the revised deed of trust on December 30, 2010. *Id.* However, he only sent Banner Bank an electronic version of the document's signature page and retained the original. Pl. Ex. 44, 115:11–17. James told Banner Bank (through his counsel) that

the original was to be held in trust "to allow time to discuss and make changes needed to the language of the underlying agreements with the attorney drafters." Def. Ex. 163, Ex. 7. No such agreement was reached, and the revised deed of trust was never delivered to Banner Bank or recorded. *Id.*; Pl. Ex. 44, 117:5–15.

15.     In March 2011, the Loan went into default. Pl. Ex. 44, 66:4–20; Pl. Ex. 12.

16.     On May 18, 2011 Banner Bank sent Real Estate Investor Education a letter stating that the Loan was in default and demanding payment of $150,000. Pl. Ex. 12. The letter further stated that Banner Bank had "not received the executed mortgages for the properties located in . . . Oregon that AmericanWest Bank holds as collateral for the loan," and that by not providing those documents, Real Estate Investor Education was "not allowing the bank to prefect its collateral position in the properties." *Id.*

17.     Real Estate Investor Education failed to cure the default, and James did not make payments under the Guaranty.

**Alteration and Recordation of the Deed of Trust**

18.     With the Loan in default and its attempts to obtain a revised deed of trust having failed, Banner Bank determined that it needed to record the defective Deed of Trust. Trial Tr., 242:12–243:5; 277:8–5; Pl. Ex. 44, 49:13–17, 110:15–20.

19.     Banner Bank knew that it could not record the Deed of Trust in its current form because it was not signed by Loree and that the Deed of Trust would therefore need to be altered in order to be recorded. Pl. Ex. 44, 49:13–50:19, 110:15–111:8; Def. Ex. 147.

20.     Ms. Norman sent the Deed of Trust to Banner Bank's Oregon counsel to have it reviewed and recorded. Def. Ex. 163, 8:21–9:2.

21.     On July 11, 2011, a paralegal for Banner Bank's Oregon counsel communicated with agents of First American Title Company to determine what changes needed to be made to the Deed of Trust in order to make it recordable.  Def. Ex. 147.

22.     Agents for First American Title Company then communicated with an employee of Lane County, Oregon, who stated that the Deed of Trust would be accepted for recordation if Loree's name was crossed out and the notary line was corrected.  *Id.*  Counsel for Banner Bank made the suggested changes, and on July 13, 2011, the Deed of Trust was recorded in Lane County, Oregon.  *Id.*; Pl. Ex. 52 & 53.

23.     The original recorded version of the Deed of Trust shows that Loree's name, signature block, and notary acknowledgement were struck through.  Pl. Ex. 53.  It also shows that the numbers "132" were written on the upper left-hand corner of the first page in blue ink, a series of numbers were written on the top of the first page and subsequently whited-out, and a note was written on the right-hand corner of the first page in pencil and subsequently erased.  *Id.*  It appears the note reads: "Not  [r?] . . d as per Rick S + Dan Eag,"[3] but the court does not reach a conclusion on what the language meant.

24.     The whited-out numbers and erased note (the "Discovered Alterations") were not visible on the copies of the Deed of Trust that were attached to Banner's Bank Complaint or provided in discovery.  (ECF No. 2-6; ECF No. 285-4.)  The Discovered Alterations were also not visible in the copy of the Deed of Trust that was certified by Lane County, Oregon.  Pl. Ex. 52.  The written numbers "132" were, however, visible on each of these copies of the Deed of Trust.  (ECF No. 2-6; ECF No. 285-4; Pl. Ex. 52.)

---

[3] The letters in the brackets and the letters replaced by the ellipsis are not clearly readable.

25.     Counsel for Loree first learned of the Discovered Alterations when the original recorded version of the Deed of Trust was submitted during the second day of the Bench Trial. Trial Tr., 325:1–8.  Counsel for Banner Bank made arrangements to receive the original recorded version of the Deed of Trust during trial.  *Id.*

26.     Because Loree did not learn of the Discovered Alterations until well after discovery had ended, she was not able to inquire as to who had made the Discovered Alterations or the content and/or significance of the numbers that were whited-out or the note that was erased.  Loree implies that Discovered Alterations indicate that Banner Bank had knowledge that the Deed of Trust was defective, but no testimony was offered at trial to resolve these questions. Trial Tr., 399:10–404:8.

### **Banner Bank's Initiation of this Matter**

27.     Banner Bank initiated this action by Complaint filed on August 6, 2012.  (ECF No. 2, Compl.)  The Complaint named Loree as a defendant and sought declaratory judgment determining that she does not hold any interest in the Eleven Parcels.  *Id.* at ¶ 68.

28.     The Complaint also sought a writ directing the sale of James's interest in the Oregon Properties, including his interest as a co-owner in Unit 7, in which Loree also owned an undivided interest.  *Id.* at ¶¶ 25-27; 73–77.

29.     On September 12, 2014, Loree filed an Answer to the Complaint in which she sought to have the Deed of Trust canceled and asserted counterclaims against Banner Bank for slander of title, civil conspiracy, abuse of process, and breach of contract.  (ECF No. 75.)

30.     By Order dated February 21, 2017, the court denied Loree's request to cancel the Deed of Trust and dismissed all of her counterclaims except for her claim for breach of contract. (ECF No. 196.)

31.     Loree's breach of contract claim alleges that Banner Bank breached the Release by "recording an erroneous deed of trust," by "perpetuating claims, controversies and disputes regarding 'Unit 7,'" and by "filing and maintaining an action against [Loree] notwithstanding knowledge of its own contractual duty and its fraudulent, illegal, and coercive acts and conduct." *Id.* at ¶ 28.

<u>CONCLUSIONS OF LAW</u>

## I.      JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and because the matter in controversy exceeds $75,000.

2.      Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged occurred in the District of Utah.


## II.     LOREE'S BREACH OF CONTRACT CLAIM

3.      Under Utah law, a third-party beneficiary is a person who is "'recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration.'" *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 47, 28 P.3d 669, 684 (quoting *Rio Algom Corp. v. Jimco Ltd.,* 618 P.2d 497, 506 (Utah 1980) (internal quotations and citation omitted)).  A third party beneficiary gains "enforceable rights under a contract" if it is clear that the parties to the contract intended "'to confer a *separate and distinct benefit*'" upon her.  *Id.* (emphasis in original) (quoting *Rio Algom Corp.,* 618 P.2d at 506).

4.      The parties to the Release clearly intended to confer a separate and distinct benefit upon Loree—they drafted into the document a paragraph entitled "Release of Loree Smith" that specifically described the nature of the parties' release of her.  *See* Pl. Ex 11, at ¶ 4.  Thus, although Loree was not a party to the Release, she was clearly an intended third party beneficiary to it and therefore has the right to sue for a breach of its terms.  *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 2015 UT 55, ¶ 37, 355 P.3d 965, 972 ("In contract law, a third party has standing to sue if it is an *intended,* and not merely an *incidental,* beneficiary." (emphasis in original) (citing *Ron Case Roofing & Asphalt Paving v. Blomquist,* 773 P.2d 1382, 1386 (Utah 1989)).

5.      In Paragraph 4 of the Release, Banner Bank agreed to "fully, finally and completely RELEASE and FOREVER DISCHARGE [Loree] of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, debts, liens, actions and causes of action of any and every nature whatsoever relating to the Loan."  Pl. Ex 11, at ¶ 4 (emphasis in original).

6.      Banner Bank named Loree as a defendant in this action in order to obtain a declaratory judgment determining that she does not hold any interest in the Eleven Parcels. (ECF No. 2, at ¶ 68.)

7.       Banner Bank also sought an order to foreclose on the Deed of Trust and a writ directing the sale of James's interest in the Oregon Properties.  *Id.* at ¶¶ 67, 73–77.  This included Unit 7, a parcel in which—at that time—Loree held an undivided interest.  Def. Ex. 148.

**A.** **Banner Bank breached the Release by bringing this action against Loree.**

8.      By bringing this action against Loree, Banner Bank asserted a claim, controversy, dispute, demand, action, and/or cause of action relating to the Loan.  Doing so was a clear breach of the terms of the Release.

9.      Banner Bank asserts numerous arguments as to why bringing Loree into this action cannot constitute a breach of the Release.  None are persuasive.

10.      First, Banner Bank argues that this court's prior determination that Loree was properly joined as a party to this action precludes her breach of contract claim.  It does not.  In her motion to dismiss, Loree argued that she should be dismissed from this action because "based on the release, [Banner Bank] indisputably has no right to assert the claim against [her]." (ECF No. 30, at p. 3.)  The court denied this motion on October 15, 2013, and found that Loree was a properly joined party.  (ECF No. 54.)  However, the court's ruling simply recognized that the Release did not provide a basis for Loree's dismissal—it did not find that Banner Bank was absolved of its agreement to release her from any potential actions related to the Loan.  Banner Bank's legal right to sue Loree is separate and distinct from any consequence it may suffer as a result of it executing that right.  Thus, although Banner Bank was able to state a claim to bring Loree into this action, it did so at its own peril, as it had expressly ensured Loree that it would release her from any potential actions related to the Loan.

11.      Banner Bank's remaining arguments fail for similar reasons.  It argues that it was permitted to name Loree under the Declaratory Relief Act, that it was justified in doing so because there was uncertainty as to the ownership of Unit 7, and that it was required to do so under Rules 19 and 20 of the Federal Rules of Civil Procedure.  Even if all of these assertions are true, they do not change, or excuse, the fact that Banner Bank previously released Loree from

any such actions.  Again, while Banner Bank was legally permitted to name Loree in this action, it did so at its own peril, because it had already agreed not to do so.

12.     Finally, Banner Bank argues that Loree's claim for breach of contract fails because it only sought declaratory relief against her.  This ignores the extremely broad (and clear) language of the Release.  Banner Bank agreed to release Loree from "any and all claims, controversies, disputes, . . . . actions and causes of action *of any and every nature whatsoever* relating to the Loan."  Pl. Ex 11, at ¶ 4 (emphasis added).  A claim for declaratory relief regarding her ownership of property sought to be foreclosed on under the Loan is a "claim, controversy, or dispute" covered by the Release.

13.     In the Release, Banner Bank unequivocally agreed to release Loree from any potential actions related to the Loan, and it undeniably breached that agreement when it named her as a defendant in this action and sought declaratory judgment against her.

**B.      Banner Bank breached the Release by bringing this action to foreclose on and sell James's interests in Unit 7.**

14.     Banner Bank also breached the Release by filing an action seeking to foreclose on the Deed of Trust and direct the sale of James's interest in the Oregon Properties.

15.     Although Banner Bank seeks to foreclose on and sell only James's interest in Unit 7, such action impacts Loree in violation of the Release.  Banner Bank acknowledged the impact that a foreclosure would have on Loree, stating "[b]ecause Loree Smith is or was the wife of Defendant James Smith at the time some of the properties were conveyed to secure the loan owing to AmericanWest, the foreclosure of those properties, whether judicially or non-judicially, *will affect her rights, if any, in those Properties*."  (ECF No. 36, at 9 (emphasis added).)

16.     The foreclosure and sale that Banner Bank seeks would cause Loree to become a joint owner of Unit 7 with whomever purchased James's interest.  Moreover, it would change the

nature of her tenancy in Unit 7 and almost certainly lead to a partition action which could force

Loree to either expend money to save Unit 7 or lose her ownership in it entirely.

17.    Under the broad language of the Release, Banner Bank agreed to release Loree

from any controversy "of any and every nature whatsoever related to the Loan."  Pl. Ex 11, at ¶

4.  It breached this agreement by attempting to foreclose on the Loan and sell property of which

she owned an undivided interest.

18.    While Banner Bank is certainly within its legal rights to foreclose on property for

which it has a secured interest (assuming *arguendo* that the Deed of Trust did in fact give Banner

Bank a valid lien on James's undivided interest in Unit 7), as is discussed above, the existence of

this right does not negate the legal consequences to Banner Bank for violating its promise to

release Loree from such a controversy.

19.    Loree has established that Banner Bank breached the Release.

## III.    LOREE'S CLAIM FOR ATTORNEY FEES

20.    Loree asserts that she is entitled to recover the attorney fees she incurred in this

action.

21.    It is well settled under Utah law that "attorney fees are awardable only if

authorized by statute or by contract."  *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah

1988) (citations omitted).  Utah law also provides limited circumstances whereby attorney fees

resulting from a breach of contract may be recoverable as consequential damages.  *See Canyon

Country Store v. Bracey*, 781 P.2d 414, 420 (Utah 1989).

22.    The Release does not provide for attorney fees, and Loree acknowledged that she

is not claiming attorney fees as consequential damages.  (*See* ECF No. 234-1, at 7:17–9:4.)

Instead, Loree's claim attorney fees relies on Utah Code § 78B-5-825, which states that "the

court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith . . . ."

23.     Loree alleges that Banner Bank acted in bad faith in bringing this action against her and in attempting to foreclose on the Deed of Trust as it relates to her.

24.     To award fees pursuant to § 78B-5-825(1), "'a trial court must determine both that the losing party's action or defense was "without merit" and that it was brought or asserted in bad faith.'" *Fadel v. Deseret First Credit Union*, 2017 UT App 165, ¶ 30, 405 P.3d 807, 815 (quoting *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 7, 122 P.3d 556).

### A.     Banner Bank's action against Loree was without merit.

25.     In order to determine whether an action is "without merit," a court must look "'to whether it was frivolous or of little weight or importance having no basis in law or fact.'" *Id.* at ¶ 32 (quoting *Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 31, 347 P.3d 394). "'[T]he bare existence of a basis in law for a potential claim is not sufficient to make a claim meritorious,'" rather "'there must also be a factual basis for a party's claims apart from a statutory provision that provides a theoretical "basis in law" for those claims.'" *Id.* (quoting *Bresee v. Barton*, 2016 UT App 220, ¶ 49, 387 P.3d 536).

26.     Banner Bank named Loree in this action in order to determine her ownership in the Eleven Parcels. (ECF No. 2, at ¶¶ 67, 68.)  But Banner Bank knew before it filed this action that James was the sole owner of the Eleven Parcels, and this fact was never disputed in this action. (*See* ECF 257, at ¶ 44; Tr., 56:1–5.)  This court specifically found that there was "no evidence Loree Smith has an ownership interest in those properties." (ECF No. 196.)

27.     Banner Bank argues that Loree's joinder was necessary, and that its action against her was not meritless, because she may have claimed an interest in the Eleven Parcels. But representations made both by Loree and Banner Bank show that she could not have claimed an

interest in the Eleven Parcels that could have interfered with Banner Bank's ability to foreclose on them.

28. In her motion to dismiss, Loree acknowledged that any claims she may have to an equitable interest in the Eleven Parcels "take a back seat to legal disputes involving this property." (ECF No. 27, at p. 2–3.)

29. Banner Bank also recognized that the validity of its lien depended on the status of title at the time the Deed of Trust was signed and delivered. In its closing argument, Banner Bank attempted to refute Loree's suggestion that its lien on Unit 7 was defeated when she subsequently obtained James's interest in the property, arguing "the assertion that [Loree] may have obtained an equitable interest in [James's] interest in the condominium through the interim order of partial distribution made in November of 2012 or subsequent proceeding is entirely irrelevant *because the [Deed of Trust] conveyance was made when James Smith signed and had the [Deed of Trust] delivered to the Bank* in connection with closing on the 2009 loan transaction." (ECF No. 256, at p. 22 (emphasis added).) It is uncontested that at the time James delivered the Deed of Trust, he was the sole owner of the Eleven Parcels. Tr., 56:1–5. Thus, under Banner Bank's own arguments, any after-obtained interest Loree may have received in the Eleven Parcels could not have impacted Banner Bank's ability to foreclose on those parcels under the Deed of Trust.

30. Banner Bank's action against Loree was therefore "of little weight or importance" and had "no basis in law or fact." *Fadel*, 2017 UT App 165, ¶ 32, 405 P.3d at 815. Banner Bank named Loree in this action without merit.

31. Moreover, the possibility that Loree *may have claimed* an interest in the Eleven Parcels did not justify, or make meritorious, Banner Bank's request for declaratory judgment.

"'[T]he bare existence of a basis in law for a potential claim is not sufficient to make a claim meritorious,'" rather "'there must also be a factual basis for a party's claims . . . .'" *Bresee v. Barton*, 2016 UT App 220, ¶ 49, 387 P.3d 536, 551–52 (citing *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998)). The record unequivocally shows that Loree had not claimed an interest in the Eleven Parcels. Thus, there was no factual basis for Banner Bank to question whether Loree owned an interest in the Eleven Parcels that could affect its legal ability to foreclose under the Deed of Trust.

32. Banner Bank had no factual or legal basis to question whether Loree had an interest in the Eleven Parcels or to question whether any subsequently asserted interest could obstruct its attempts to foreclose on those parcels. Nonetheless, it named her in this action and immediately agreed to dismiss her once Loree conceded what it already knew—that any claim she might assert to the Eleven Parcels would "take a back seat to" its lien. (*See* ECF No. 256 at 11–12.) Banner Bank's action was without merit.

**B.      Banner Bank acted in bad faith in bringing this action and in concealing alterations made to the Deed of Trust.**

33. In order to determine whether an action was brought in "bad faith," a court must "'find that the plaintiff (1) lacked an honest belief in the propriety of the activities in question; (2) intended to take unconscionable advantage of others; or (3) had intent to, or knowledge of the fact that the activities in question will hinder, delay or defraud others.'" *Fadel*, 2017 UT App 165, ¶ 35, 405 P.3d at 816 (alterations and omissions omitted) (quoting *Verdi Energy Group, Inc. v. Nelson*, 2014 UT App 101, ¶ 30, 326 P.3d 104). "'To establish a lack of good faith, or "bad faith" under [§ 78B-5-825], a party must prove that one or more of these factors is lacking.'" *Still Standing Stable, LLC*, 2005 UT 46, ¶ 12, 122 P.3d 556, 560 (quoting *In re Sonnenreich*, 2004 UT 3, ¶ 50, 86 P.3d 712, 726).

34.     On December 30, 2010, Banner Bank expressly agreed to release Loree from any and all claims related to the Loan.  Pl. Ex 11, at ¶ 4.  Less than two years later, it named her in this action and sought declaratory judgment against her to ensure that it would be able to foreclose on property pledged as collateral for that  Loan.  The language of the Release was broad, clear, and strictly prohibited the very action that Banner Bank took.  There can therefore be no question that Banner Bank "lacked an honest belief in the propriety of" its request for declaratory judgment against Loree.  *Fadel*, 2017 UT App 165, ¶ 35, 405 P.3d at 815.

35.     Banner Bank was "aware of [the] limitations and restrictions" stated in the Release but nevertheless asserted this action against Loree in clear violation of those conditions. Such blatant disregard for an agreement is improper and "does not and cannot constitute a good faith basis for the pursuit of [this action]."  *Id.* at ¶ 36 (internal quotations and citation omitted). Loree moved that she be dismissed from the case in her initial motion, which Banner Bank opposed. (ECF 27, 28, 30 and 36.)  Banner Bank therefore acted in bad faith in bringing this action against Loree.  *See Still Standing Stable, LLC*, 2005 UT 46, ¶ 12, 122 P.3d at 560.

36.     Banner Bank's bad faith is not diminished by the fact that it was legally within its rights to bring Loree into this action, and it's compliance with the rules of civil procedure does not excuse it from its express promise that it would release Loree from any potential actions related to the Loan.  As discussed above, Banner Bank's legal right to sue Loree is separate and distinct from any consequence it may suffer for executing that right.  By exercising that right, and naming Loree in this action, Banner Bank acted in bad faith.

37.     Banner Bank also acted in bad faith in the prosecution of this action, as it concealed alterations made to the Deed of Trust while it pursued dismissal of Loree's counterclaims and the foreclosure and sale of James's interest in Unit 7.

38.     Banner Bank knew that it altered, or directed others to alter, the Deed of Trust.  It also knew that it had in its control the only version of the document that showed the full extent of those alterations.  Nonetheless, it failed to disclose the alterations to Loree until the second day of trial.  While withholding this material information, it sought, and was successful in obtaining, dismissal of Loree's counterclaims, and it pursued the foreclosure and sale of James's interest in Unit 7.  Its concealment of these alterations was "intended to take unconscionable advantage of [Loree]" and therefore constituted bad faith.  *Fadel*, 2017 UT App 165, ¶ 35, 405 P.3d at 815.

39.     Banner Bank drafted the Deed of Trust with the intent that Loree would sign the document, but when she refused and Banner Bank was thus unable to record the document, it then tried to obtain a revised deed of trust that did not require her signature. When that effort also failed, Banner Bank altered, or caused someone else to alter, the Deed of Trust to strike out her name and cause it to be recorded.  Banner Bank knew or should have known that such a defective recorded instrument would have an impact on Loree and subject her to the risk of clouding the title to Unit 7.

40.     Banner Bank has adamantly argued that its actions were not wrongful and that the Deed of Trust was valid when James placed his signature on it and that it remained valid despite the alterations.  Even if this were true, Banner Bank ignores a fact that it once candidly admitted—that the foreclosure of Unit 7 "will affect" Loree's rights in that property.  (ECF No. 36, at 9.)

41.     Because Loree was undeniably affected by Banner Bank's foreclosure of the Deed of Trust, as a party to the action in which that foreclosure was sought, she was entitled to know of the history of the Deed of Trust and specifically the events that led to its alteration and

recordation. Banner Bank's concealment of the Discovered Alterations until the second day of trial substantially disadvantaged Loree by limiting how Loree could pursue her case.

42. Had Loree been timely made aware of the Discovered Alterations, she could have conducted discovery as to what the alterations meant, who made them, and whether Banner Bank knew that the Deed of Trust was defective. Further, she could have, if warranted, joined necessary parties into the litigation. This information could have also been used to bolster her counterclaims and support her claim that the Deed of Trust should be canceled. Instead, Banner Bank withheld this potentially crucial information and sought to have Loree's claims thrown out as baseless and moot.

43. Banner Bank's withholding of this information from Loree until it was too late for her to conduct discovery or join parties, or even get answers as to the basis of those alterations, was unconscionable, and Banner Bank took advantage of Loree by moving to dismiss her claims and by continuing to pursue the foreclosure and sale of Unit 7 without disclosing that information. This is bad faith.

**C. Loree is entitled to recover the attorney fees she incurred in this action.**

44. Loree has established that Banner Bank acted in bad faith in seeking declaratory judgment against her and by concealing alterations that were made to the Deed of Trust until it was too late for Loree to utilize that information to her benefit. Loree is therefore entitled to recover the reasonable attorney fees she incurred in this action pursuant to Utah Code § 78B-5-825(1). *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 31, 61 P.3d 1009, 1018 ("Where a party has acted on a meritless claim and in bad faith, in most cases it would be inequitable *not to* award attorney fees." (emphasis in original)).

45. Banner Bank argues that Loree should be barred from recovering attorney fees because she failed to disclose the amount of fees she incurred. However, because Loree's claim

23

arises under § 78B-5-825, and not as a claim for damages, she did not run afoul of Rule 25 of the Federal Rules in Civil Procedure by failing to make such disclose.

46.     Banner Bank also argues that even if the court finds that it acted in bad faith and requires it to pay Loree's attorney fees, it should only have to pay for fees she incurred defending against the declaratory judgment claim and not for fees she spent pursuing her counterclaims. The court disagrees.

47.     Because Loree's counterclaims arose "out of the transaction or occurrence that is the subject matter of [Banner Bank's] claim" for declaratory judgment and did not "require adding another party over whom the court cannot acquire jurisdiction," she was required to bring them once she was made a party to this action. FED. R. CIV. P. 13(a). Had she failed to do so, she would have been barred from asserting them in a future proceeding. *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469, n. 1 (1974) ("A counterclaim which is compulsory but is not brought is thereafter barred.").

48.     Banner Bank agreed to release Loree from the very sort of claim that it brought her into here. It breached the Release, and as a result, Loree had no choice but to bring any claims arising from the Loan that she may have had against Banner Bank. Banner Bank forced Loree's hand, and she should not be excluded from recovering the fees that she incurred in pursuing her compulsory counterclaims. Loree is entitled to recover all reasonable fees that she incurred since she was named in this action.

## CONCLUSION

For the reasons stated herein, the court finds in favor of Counterclaimant Loree Smith and finds that Plaintfiff Banner Bank breached the terms of the Consent, Waiver and Release Agreement. Moreover, the court finds that Banner Bank initiated and continued to pursue this

action against Loree in bad faith, as doing so was a blatant breach of the express language of the Release.  Banner Bank also prosecuted this matter in bad faith by improperly concealing the alterations that it made, or directed to be made, to the Deed of Trust.  Loree is therefore entitled to recover the reasonable attorney fees she incurred in this action pursuant to Utah Code § 78B-5-825(1).  Loree is hereby instructed to submit, within **twenty-one (21) days** of the entry of this Order, an affidavit itemizing the attorney fees she has incurred since she was named in this action.

DATED this 6th day of May, 2019.

BY THE COURT:

Clark Waddoups
United States District Court Judge